UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>ALEXANDER E. ISTOMIN, aka,<br>Alexander Istomin MD, Eugene Istomin,<br><br>Defendant | ) | Criminal No. 21-076-JJM<br><br>In Violation of:<br><br>Count 1: 18 U.S.C. § 1347 (Health Care Fraud), Counts 2-9: 18 U.S.C. §1341 (mail fraud), 18 U.S.C. § 1028A, aggravated identity theft, and 21 U.S.C. §§ 331(k) and 333(a)(2), causing the introduction of misbranded drugs |

# INFORMATION

The United States Attorney charges that:

## GENERAL ALLEGATIONS

At all times material to this Information:

### The Defendant and Related Entities

1. Defendant ALEXANDER ISTOMIN (ISTOMIN) is a Registered Nurse licensed in the State of Rhode Island. ISTOMIN is also licensed by the State of Rhode Island as an Advanced Practice Registered Nurse, Certified Nurse Practitioner (APRN-CNP) and holds a license as a Controlled Substance Registration, Advanced Practice Registered Nurse (CSR-APRN).

2. Rhode Island Diagnostic Center (RIDC) is located at 58 Main Street, Suite 201, East Greenwich, Rhode Island. Defendant ALEXANDER ISTOMIN is the Director of RIDC.

3. Rhode Island Diagnostic Center maintains a bank account ending in 2029 at Webster Bank headquartered in Waterbury, Connecticut. Defendant ALEXANDER ISTOMIN is the sole signatory on the account.

4. Defendant ALEXANDER ISTOMIN is licensed by the State of New York as a Registered Nurse and as a Nurse Practitioner in Adult Health. Defendant ISTOMIN's practice location is 8708 Justice Ave., Apt. 2E, Elmhurst, New York.

5. New York Medical Center is an entity located at 8708 Justice Ave, Suite 2E, Elmhurst, New York and 3020 NE 32nd Avenue, #305, Fort Lauderdale, Florida. Defendant ISTOMIN is a provider at New York Medical Center.

6. NP in Adult Health Diagnostic and Treatment, PLLC, is an entity located at 8708 Justice Ave, Suite 2E, Elmhurst, New York and 333 Earl Ovington Blvd., Uniondale, New York. Defendant ISTOMIN is the medical administrator of NP in Adult Health Diagnostic and Treatment, PLLC.

7. Defendant ALEXANDER ISTOMIN is licensed by the State of Florida as a Registered Nurse and as an Advanced Practice Registered Nurse. Defendant ISTOMIN's practice location as a Registered Nurse is 8708 Justice Ave., Apt. 2E, Elmhurst, New York. ISTOMIN's practice location as an Advanced Practice Registered Nurse is New York Medical Center at 3020 NE 32nd Avenue, Ste. 305, Fort Lauderdale, Florida.

8. Defendant ALEXANDER ISTOMIN and RIDC submit claims to Aetna, United Health Care (UHC), Anthem, and BCBSMA, using 58 Main Street, East Greenwich, Rhode Island, as the practice location.

9. Defendant ALEXANDER ISTOMIN and New York Medical Center submit

claims to Aetna, UHC, Anthem, Cigna and Medicare using 8708 Justice Avenue, Elmhurst, New York as the practice location.

10. Defendant ALEXANDER ISTOMIN and New York Medical Center submit claims to Aetna using 1617 3rd Avenue 286296, New York, New York as the practice location.

11. Defendant ALEXANDER ISTOMIN and New York Medical Center submit claims to Aetna, BCBS FL and Medicare using 3020 NE 32nd Avenue #305, Fort Lauderdale, Florida as the practice location.

12. NP in Adult Health and Diagnostic Treatment, PLLC, submit claims to Aetna, Anthem, UHC and BCBSMA, using 8708 Justice Avenue, Elmhurst, New York and 333 Earl Ovington Blvd., Uniondale, New York as the practice locations.

**The Medicare Program**

13. The Medicare program (Medicare) is a federal health care program providing benefits to persons who are over the age of 65 or disabled. The United States Department of Health and Human Services (HHS), through its agency the Centers for Medicare and Medicaid Services (CMS), administers Medicare. Medicare is a "health care benefit program" as defined by 18 U.S.C. § 24(b).

14. To enroll in Medicare, all providers are required to submit a Medicare enrollment application to CMS. In submitting the Medicare application, health care providers certify that they understand and will abide by the federal laws and regulations governing their participation in Medicare. When Medicare approves a provider's application, Medicare issues the provider a unique provider number. Among other identifiers, Medicare uses the unique provider number to identify the rendering provider of the service in claims submitted for payment, as well as a unique provider number to the entity under which the rendered service has been provided.

15. The Part B program requires that beneficiaries bear some of the costs of their care. In general, Medicare covers 80 percent of the reasonable charges for services. Medicare beneficiaries or any supplemental insurance carriers are responsible for the remaining 20 percent. This remaining 20 percent is typically referred to as the beneficiaries' "copayment" amount.

16. The copayment amount is billed by the provider to the beneficiary.

17. Medicare prohibits the waiver of copayments by providers, practitioners, or suppliers because it results in: (a) false claims; (b) violations of the anti-kickback statute, 18 U.S.C. § 1320a-7b; and (c) excessive utilization of items and services paid for by Medicare. The waiving of copayments enables providers, practitioners and suppliers to bill Medicare for services the beneficiary did not receive but which were billed to Medicare on his or her behalf.

18. Defendant ALEXANDER ISTOMIN is an enrolled Medicare provider in New York with practice locations of 8708 Justice Avenue, Apt. 2E, Elmhurst, New York, and 1617 3rd Avenue 286296, New York, New York.

19. Defendant ALEXANDER ISTOMIN is an enrolled Medicare provider in Florida with a practice location of 3020 NE 32nd Avenue, Ste 305, Fort Lauderdale, Florida.

**Commercial Insurance**

20. Private health insurers, such as Aetna, United Healthcare (UHC), Anthem, Cigna BCBS MA, and BCBS FL and other programs, are non-government run insurance programs that are typically employer-sponsored programs. These insurance plans are funded by premiums paid by an individual's employer and the employee and can vary widely in terms of the plan type, coverage and cost. Many private insurers also administer government-sponsors plans, such as Medicare Advantage plans and Medicaid Managed Care programs, in addition to offering private, i.e. non-federally funded, plans.

21. One of the types of plans administered by private health insurers is called an Administrative Services Only (ASO). An ASO is an arrangement in which a company funds its own insurance program and purchases only the administrative services from the insurer, such as billing, claims handling, and claims payment with respect to medical claims submitted on behalf of their employees. The company then reimburses the private insurer, such as Aetna, for the money the insurance company paid out for health benefits for their respective employees. As such, the employers act as a self-insured entity, which means they are financially responsible for any claim payments to their employees.

22. The Mason Tenders District Council Welfare Fund (Mason Tenders), Dell, and AstraZenaca have an ASO arrangement with Aetna. When an employee covered by Mason Tenders, Dell or AstraZeneca receives a service, that provider submits a claim to Aetna, who processes the claim then issues the payment on behalf of Mason Tenders, Dell, or AstraZenaca. Mason Tenders, Dell, or AstraZenaca, in turn, reimburses Aetna the entire amount paid to the provider. Payment for services can be made directly to the provider, or payment can be sent to the individual member, who is then responsible for paying the provider.

23. The ASO-based insurance plans offered by employers and managed by the private insurers are "health care benefit programs" as defined in Title 18, United States Code, Section 24(b).

24. Defendant ALEXANDER ISTOMIN, RIDC, New York Medical Center, and NP in Adult Health and Diagnostic Treatment, PLLC., submit claims to commercial insurance carriers, including carriers which have ASO arrangements with the Mason Tenders, Dell, and AstraZeneca.

25. Unlike Medicare, providers do not have to be enrolled as a "participating provider" with a private insurer in order to be reimbursed for the services rendered. When a provider does not have an agreement or contract with a private insurer, the provider is known as an "out-of-network" or "non-participating" provider. The biggest difference between a participating provider and a non-participating provider is the payment rate each receive for services: a participating provider's contract binds him/her to accept the rate in the contract, while a non-participating provider is reimbursed pursuant to the member's plan. Regardless of whether a provider is participating or non-participating, when s/he submits a claim to a private insurance plan, the provider certifies that the contents of the form were true, correct, complete, and that the form was prepared in compliance with the applicable laws and regulations concerning the submission of health care forms. The provider also certifies that the services being billed were medically necessary and were, in fact, provided as billed.

26. Defendant ALEXANDER ISTOMIN, RIDC, New York Medical Center, and NP in Adult Health and Diagnostic Treatment, PLLC, are non-participating providers for Aetna, United Healthcare (UHC), Anthem, Cigna BCBS MA, and BCBS FL.

**Health Care Billing Generally**

27. In order to bill private and government health insurers, such as Aetna, United Healthcare, Blue Cross Blue Shield of Florida and Medicare, providers use a five-digit number, known as a CPT code, that identifies the nature and complexity of the service provided. The CPT codes are listed in the Current Procedural Terminology ("CPT") manual, which is published annually by the American Medical Association. CPT codes are universally used by health care providers to bill government and private health insurance programs for services rendered.

Virtually every medical procedure has its own CPT code and insurance companies pay a specified amount of money for each CPT code billed.

28. The majority of CPT codes billed by Defendant ALEXANDER ISTOMIN, RIDC, New York Medical Center, and NP in Adult Health and Diagnostic Treatment, PLLC, were for services that could not be performed remotely. The in-person medical services that defendant ISTOMIN, RIDC, New York Medical Center, and NP in Adult Health and Diagnostic Treatment, PLLC billed included things like intravenous hydration, injections and biopsies.

**Count 1**

**(Health Care Fraud, 18 U.S.C. § 1347)**

29. Paragraphs 1 through 28 are incorporated by reference as if fully set forth herein.

**SCHEME AND ARTIFICE TO DEFRAUD**

30. Beginning in or around February 2014 and continuing to the present, in the District of Rhode Island, the Eastern District of New York, the Southern District of Florida, and elsewhere, defendant ALEXANDER ISTOMIN knowingly devised and intended to devise a scheme and artifice to defraud, and to obtain money and property from health care benefit programs, by improperly submitting and causing to be submitted claims for reimbursement to commercial health insurers and Medicare that falsely represented that medical services and prescription drugs were medically necessary, had been provided, and that they were eligible for Medicare and commercial health insurance reimbursement.

**MANNER AND MEANS**

31. It was part of the scheme and artifice to defraud that defendant ALEXANDER ISTOMIN billed and caused to be billed commercial insurance providers and Medicare for services that were never actually provided.

32. It was further part of the scheme and artifice to defraud that defendant ALEXANDER ISTOMIN billed and caused to be billed commercial insurance providers and Medicare for medical services provided in Rhode Island, the Eastern District of New York, and the Southern District of Florida when in fact he was out of the country in Russia.

33. It was further part of the scheme and artifice to defraud that defendant ALEXANDER ISTOMIN billed and caused to be billed commercial insurance providers for medical services purportedly provided at an office space in East Greenwich, Rhode Island.

34. It was further part of the scheme and artifice to defraud that defendant ALEXANDER ISTOMIN billed and caused to be billed commercial insurance providers for medical services purportedly provided in East Greenwich, Rhode Island, when he was in New York and Florida.

35. It was further part of the scheme and artifice to defraud that defendant ALEXANDER ISTOMIN billed and caused to be billed commercial insurance providers and Medicare for medical services purportedly provided in the Eastern District of New York when he was in Florida.

36. It was further part of the scheme and artifice to defraud that defendant ALEXANDER ISTOMIN billed and caused to be billed Medicare for medical services purportedly provided in the Southern District of Florida when he was in New York.

37. It was further part of the scheme and artifice to defraud that defendant ALEXANDER ISTOMIN billed and caused to be billed commercial insurance providers and

Medicare for services purportedly provided in Rhode Island, the Eastern District of New York, and the Southern District of Florida to patients and beneficiaries who were outside of the United States at the time the medical services were allegedly rendered.

38. It was further part of the scheme and artifice to defraud that defendant ALEXANDER ISTOMIN waived copayments for Medicare beneficiaries despite being aware that waiving copayments was prohibited by Medicare. By waiving copayments they otherwise would be responsible for, defendant ISTOMIN induced beneficiaries to not report ISTOMIN's fraudulent billing to Medicare.

39. It was further part of the scheme and artifice to defraud that defendant ALEXANDER ISTOMIN caused health care reimbursement checks for medical services allegedly rendered in East Greenwich, Rhode Island, to be mailed to his office space at 58 Main Street, Suite 201, East Greenwich, Rhode Island.

40. It was further part of the scheme and artifice to defraud that defendant ALEXANDER ISTOMIN diverted proceeds of the fraud for his personal use and benefit, and the use and benefit of others, and to further the fraud.

41. It was further part of the scheme and artifice to defraud that defendant ALEXANDER ISTOMIN caused fraudulent prescriptions to be filled and returned to him so that he could distribute them to individuals other than those in whose names the prescriptions were filled.

**EXECUTION OF THE SCHEME**

42. Beginning in or around February 2014 and continuing to the present, in the District of Rhode Island, the Eastern District of New York, the Southern District of Florida, and elsewhere, defendant ALEXANDER ISTOMIN knowingly devised and intended to devise a

scheme and artifice to defraud, and to obtain money and property from health care benefit programs, by improperly submitting and causing to be submitted claims for reimbursement to commercial health insurers and Medicare that falsely represented that medical services had been provided, from which ISTOMIN received approximately $4,379,158.98.

All in violation of Title 18, United States Code, Section 1347.

**Counts 2-9, Mail Fraud**
**(18 U.S.C. § 1341)**

**SCHEME AND ARTIFICE TO DEFRAUD**

43. Paragraphs 1 through 28 are incorporated by reference as if fully set forth herein.

44. Beginning in or around February 2014 and continuing to the present, in the District of Rhode Island and elsewhere, defendant ALEXANDER ISTOMIN knowingly devised and intended to devise a scheme and artifice to defraud, and to obtain money and property from health care benefit programs, by improperly submitting claims for reimbursement to commercial health insurers and Medicare that falsely represented that medical services were medically necessary, eligible for commercial health insurance reimbursement, and had been provided.

**MANNER AND MEANS**

45. Paragraphs 31 through 40 are incorporated by reference as if fully set forth herein.

**EXECUTION OF THE SCHEME**

46. On or about the dates indicated below, in the District of Rhode Island, for the purpose of executing or attempting to execute the scheme and artifice to defraud described in paragraphs 38 through 40, defendant ALEXANDER ISTOMIN did knowingly and willfully cause to be delivered by mail, to 58 Main Street, East Greenwich, Rhode Island, checks made payable to Rhode Island Diagnostic Center, from the commercial insurers described below and in the amounts stated, which were delivered by the United States Postal Service:

| COUNT | DATE | INSURER | AMOUNT |
|---|---|---|---|
| **2** | 7/9/2014 | Aetna Life Insurance | $875.00 |
| **3** | 1/15/2015 | United Healthcare Service LLC | $1,400.00 |
| **4** | 2/24/2016 | Aetna Life Insurance | $3,290.00 |
| **5** | 2/2/2017 | United Healthcare Service LLC | $1.037.31 |
| **6** | 2/28/2018 | Aetna Life Insurance | $2,522.44 |
| **7** | 7/17/2019 | Aetna Life Insurance | $833.86 |
| **8** | 9/16/2020 | Aetna Life Insurance | $1,035.45 |
| **9** | 3/10/21 | Aetna Life Insurance | $775.44 |

All in violation of Section 1341 of Title 18 of the United States Code.

**Count 10, Aggravated Identity Theft**

**18 U.S.C. § 1028A(a)(1)**

48. Paragraphs 1 through 42 are incorporated by reference as if fully set forth herein.

49. On or about, September 3, 2018, in the District of Rhode Island, the defendant, ALEXANDER ISTOMIN, did knowingly transfer, possess and use, and willfully caused, the transfer, possession and use, without lawful authority, a means of identification of another person, that is the full name and date of birth of J.K., which defendant ISTOMIN knew belonged to a real person, during and in relation to felony health care fraud, 18 U.S.C. § 1347.

All in violation of Title 18, United States Code, Section 1028A(a)(1).

**Count 11, Causing the Introduction of Misbranded Drugs**

**21 U.S.C. §§ 331(k) and 333(a)(2).**

50. Ezetimibe and Rosuvastatin were drugs within the meaning of Title 21, United States Code, Section 321(g)(1) and were prescription drugs as defined in Title 21, United States

Code, Section 353(b)(1) and could lawfully be dispensed only upon the prescription of a practitioner licensed by law to administer such drugs.

51. The prescription drugs Ezetimibe and Rosuvastatin and components of these prescription drugs were shipped in interstate commerce to the State of New York.

52. Pursuant to Title 21, United States Code, Section 353(b)(1), the act of dispensing a prescription drug without a prescription was deemed to be an act that resulted in the drug being misbranded while held for sale.

53. Under Title 21, United States Code, Section 331(k), it was illegal to do or cause to be done any act with respect to a drug if the act was done while the drug was held for sale after shipment in interstate commerce and the act resulted in the drug being misbranded.

54. On or about March 14, 2018, in the Eastern District of New York and elsewhere, the defendant did, with intent to defraud and mislead, dispense and cause to be dispensed the prescription drugs Ezetimibe and Rosuvastatin without the valid prescription of a practitioner licensed by law to administer the drugs, while the drugs were held for sale and after the drugs had been shipped in interstate commerce, which acts resulted in the drugs being misbranded within the meaning of Title 21, United States Code, Section 353(b)(1).

All in violation of Title 21, United States Code, Sections 331(k) and 333(a)(2).

## FORFEITURE ALLEGATIONS

The allegations contained in this Information are realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to 18 U.S.C. § 982(a)(7). Upon conviction of the offense set forth in Count 1, violation of 18 U.S.C. § 1347, ALEXANDER ISTOMIN shall under 18 U.S.C. § 982(a)(7) forfeit to the United States of America the sum of $4,379,158.98, an amount equal to a portion of the gross proceeds traceable to the commission of the offense. This

sum shall be sought in the form of a money judgment, and the United States will be entitled to the forfeiture of substitute property under 21 U.S.C. § 853(p) as incorporated by 18 U.S.C. § 982(b)(1) and 28 U.S.C. § 2461(c), including but not limited to ALEXANDER ISTOMIN's interest in each of the following:

A. $43,911.11 in funds from bank account No. XXXX2586 in the name of Alexander Eugene Istomin, MD at Citibank, Providence, Rhode Island seized by the FBI on August 11, 2021,

B. $863.72 in funds from bank account No. XXXX2029 in the name of Alexander Eugene Istomin at Webster Bank, Boston, Massachusetts seized by the FBI on August 11, 2021,

C. $2,971.48 in funds from bank account No. XXXXXX9433 in the name of Alexander Eugene Istomin at Regions Bank, Birmingham, Alabama seized by the FBI on August 11, 2021,

D. $2,316.30 in funds from bank account No. XXXX7027 in the name of Alexander Eugene Istomin at Regions Bank, Birmingham, Alabama seized by the FBI on August 11, 2021,

E. $1,567.08 in funds from bank account No. XXXX4148 in the name of Alexander Eugene Istomin at Regions Bank,

Birmingham, Alabama seized by the FBI on August 11, 2021,

F. $1,589.57 in funds from bank account No. XXXX5986 in the name of DBA Alexander E. Istomin MD at Bank of America, Boston, Massachusetts seized by the FBI on August 11, 2021.

G. $635.91 in funds from bank account No. XXXX0293 in the name of New York Medical Center LLC at Bank of America, Boston, Massachusetts seized by the FBI on August 1, 2021.

H. $1,947.74 in funds from bank account No. XXXX1753in the name of Alexander Eugene Istomin at Amerasia Bank, Flushing, New York seized by the FBI on August 11, 2021.

I. $350.78 in funds from bank account No. XXXX0095 in the name of NY Medical Center at Amerasia Bank, Flushing, NY seized by the FBI on August 11, 2021.

J. a 2013 BMW X1 SUV (VIN WBAVM5C55DVV90748) seized by the FBI on August 11, 2021 in Fort Lauderdale, Florida,

K.. a 2015 Audi Q5 SUV (VIN WA1LFAFP9FA038457) seized by the FBI on August 11, 2021 in Fort Lauderdale, Florida, and

L. a 2017 Porsche Macan Wagon (VIN WP1AG2A58HLB52140) seized by the FBI on August 11, 2021 in Fort Lauderdale, Florida.

ZACHARY A. CUNHA
UNITED STATES ATTORNEY

______________________________
LEE H. VILKER
ASSISTANT UNITED STATES ATTORNEY
DEPUTY CHIEF, CRIMINAL DIVISION

_________________________________
DULCE DONOVAN
ASSISTANT UNITED STATES ATTORNEY

Dated: September 13, 2022